```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                       CHARLOTTE DIVISION
                        3:03CV547-02-MU
                        (3:01CR56-01-MU)
```

DAVID BARTHOLOW, JR.,            )
    Petitioner,              )
                             )
    v.                       )          **O R D E R**
                             )
UNITED STATES OF AMERICA,        )
    Respondent.              )
_____)

**THIS MATTER** is before the Court on the petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, filed November 17, 2003; on the "Government's Answer To Petitioner's Motion And Motion For Summary Judgment," filed February 20, 2004; on the petitioner's "Request [T]o [B]e [A]ppointed Counsel . . . ," filed September 16, 2004; and on his <u>de facto</u> motion for leave to amend Motion to Vacate, filed January 28, 2005.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on May 7, 2001, a Superceding Bill of Indictment was filed, charging the petitioner and another individual with multiple violations of federal law. In particular, the petitioner was charged with having used, carried or possessed a bomb during and in relation to the commission of a crime of violence, in violation of 18

U.S.C. §924(c) (Count One); he was charged with maliciously attempting to damage, by means of an explosive, certain property (an ATM machine) which is used in interstate commerce, in violation of 18 U.S.C. §844(i) (Count Two); he was charged with having received and possessed an unregistered bomb, in violation of 26 U.S.C. §5861(d) (Count Three); he was charged with having received and possessed a bomb in violation of 26 U.S.C. §5861(f) (Count Four); he was charged with having engaged in the business of manufacturing a bomb without a license to do so, in violation of 18 U.S.C. §§842(a)(1) and 844(a) (Count Five); and he was charged with having stored such bomb in a manner which did not conform with the regulations set forth by the Secretary of the Treasury, all in violation of 18 U.S.C. §§842(j) and 844 (Count Six).

On August 22, 2001, the petitioner entered into a written Plea Agreement with the government. Under paragraph 1 of the Agreement, the petitioner promised to plead guilty to Counts Two through Six, and he admitted that he, in fact, was guilty of those charges. For its part, the government promised to dismiss the charge set forth in Count One of the Indictment, which single offense would have exposed the petitioner to a statutory minimum mandatory 30-year term of imprisonment upon his conviction for it.

The Agreement further explained that the statutory mandatory

2

minimum and maximum sentences for Count Two were five and 20 years imprisonment, respectively; that the statutory maximum terms for each Counts Three through Five was ten years imprisonment; and that the statutory maximum term for Count Six was one year's imprisonment. However, the Agreement expressly noted the petitioner's understanding that his sentence had not yet been determined, and that any sentence estimate from any source--including defense counsel--was merely a prediction and not a binding promise of that sentence.

Under the Agreement, the petitioner also waived his right to directly appeal his convictions or sentences on any ground. Similarly, the petitioner waived his right to collaterally challenge his convictions or sentence on any grounds except ineffective assistance of counsel and prosecutorial misconduct. The petitioner's Plea Agreement was filed with the Court on August 24, 2001.

Next, on September 13, 2001, the Court conducted a Plea & Rule 11 Hearing in this matter. On that occasion, the Court engaged the petitioner in a lengthy colloquy to ensure that his guilty pleas were being intelligently and voluntarily tendered.

In response to the Court's numerous questions, the petitioner swore, <u>inter alia</u>, that he had received a copy of the subject Superceding Indictment; that he had fully discussed that document with his attorney; that he understood the penalties

3

which he was facing as explained by counsel and the Court; that he and his attorney had discussed the U.S. Sentencing Guidelines and how they might be applied in his case; and that he understood the terms of his Plea Agreement.

More critically, the petitioner swore that he understood his right to plead "not guilty" to the charges and proceed to trial on those matters; that no one had threatened, intimidated or forced him to plead guilty, and other than the terms of his Agreement, no one had made him any promises of leniency in order to induce his guilty pleas; that he was pleading guilty and wanted the Court to accept his pleas because he, in fact, was guilty of the subject offenses; and that he was satisfied with his attorney's services. Thus, after hearing the foregoing responses from the petitioner, the Court accepted the pleas.

However, about six months later on March 6, 2002, the petitioner's first defense attorney filed a Motion to Withdraw as counsel and a Motion to Withdraw Pleas. The Motion to Withdraw as counsel was based upon the petitioner's beliefs that counsel had deceived him by lying to him and coercing him into pleading guilty, thereby causing a break-down in counsel's relations with the petitioner. The Motion to Withdraw Pleas also was premised upon the petitioner's representations that he was deceived and coerced by his attorney, and upon the petitioner's changed opinion that he was not guilty of the subject charges.

4

Accordingly, on March 28, 2002, the Court held a Hearing on those Motions. At that time, the Court determined, despite the lack of proof that defense counsel had behaved inappropriately, that it would be best for both parties if counsel were allowed to withdraw. However, the Court denied the petitioner's Motion to Withdraw his guilty pleas, and pointed out that the petitioner could renew such Motion, if he chose to do so, after counseling with the new attorney who would be appointed for him.

Thereafter, on May 8, 2002, replacement defense counsel filed a Renewed Motion to Withdraw Plea. There, counsel reasserted the petitioner's contentions that he was innocent; and that his guilty pleas were the result of coercion, undue influence and "inaccurate and material information." Consequently, on June 18, 2002, the Court held a haring on the petitioner's Motion to Withdraw Pleas.

During that Hearing, the petitioner stated that he was <u>not</u> prepared to proceed with his Motion to Withdraw Pleas. Instead, the petitioner attempted to shift the Court's attention to other allegations, including that he was entitled to a refund of a portion of the fees he had paid to yet a third attorney to represent him on bond review matters; and that the government had threatened and intimidated his sister, thereby causing her to make incriminating statements against him. Ultimately, however, the petitioner made an oral motion to withdraw his Motion to

Withdraw Pleas, which was granted, and he agreed not to renew his Motion to Withdraw his pleas unless he could present new evidence to support such a Motion.

The petitioner did not formally make any additional attempts to withdraw his guilty pleas. Thus, on November 19, 2002, the Court held a Factual Basis & Sentencing Hearing in this case. At that Hearing, counsel for the petitioner essentially continued the petitioner's belated challenge to the factual bases for his guilty pleas. The petitioner also told the Court that he was "not exactly guilty" of the subject charges.

Consequently, the government presented testimony from the agent who had investigated this matter. According to that testimony, the agent had obtained evidence reflecting that on an occasion in June or July 2000, the petitioner and his co-defendant made a pipe bomb by using information which they had obtained from a website located on the Internet.

During the early morning hours of August 6, 2000, the petitioner drove himself, his co-defendant and a third individual to a free-standing, federally insured ATM machine. The petitioner stopped the car some distance from the machine, his co-defendant got out and taped the bomb to the access door of the ATM machine. The petitioner's co-defendant lit the fuse and returned to the car. The petitioner then drove down the road and stopped the car so that the men could wait to hear the sound of

6

the explosion. After hearing the explosion, the petitioner twice drove slowly past the machine so that the men could survey the damage. By that point, however, people were assembling on the parking lot where the machine was located, so the men decided to leave the scene.

The agent further testified that during a search of the residence where the petitioner and his co-defendant were living, law enforcement officials found PVC piping in a shed; and that witnesses (the petitioner's father and sister with whom he also shared that residence) had advised that the bomb had been constructed in stages throughout various areas of the house.

The agent also testified concerning other evidence which was obtained. Such evidence reflected that this was the third of three bombs which the petitioner and his co-defendant had made; that at least one of the other bombs had been detonated; and that the petitioner's co-defendant had made a statement, explaining that the men had targeted the ATM machine because they had very little money. However, on cross-examination, the agent admitted that her report did not reflect the co-defendant's admission concerning the motive for the ATM bombing.

Next, the petitioner called his co-defendant as a witness. Such witness admitted that he and the petitioner had made three bombs, but denied that they tried to blow up the ATM machine in order to obtain cash. Instead, the witness claimed that he and

7

the co-defendant had decided to bomb the machine only because they had been drinking too much.  The witness further stated that the first bomb which they made had been a "dud," but that the second bomb had been detonated in a field.  The witness stated that after the third bomb was constructed, the petitioner kept the device in his bedroom until it was retrieved on the night that the men bombed the ATM machine.  The witness also stated that the petitioner initially had been reluctant to bomb the ATM machine, but eventually agreed to the idea.

Following the witnesses' testimony, the Court overruled the petitioner's objections to the offense description which was set forth in the Pre-Sentence Report, and concluded that the agent's testimony provided adequate factual bases to support the petitioner's guilty pleas.  The Court also adopted the Report's calculations of the petitioner's criminal history and his offense level.  The Court then sentenced the petitioner to four concurrent terms of 90 months imprisonment on Counts Two through Five, and to a concurrent one year term of imprisonment on Count Six.  Although the petitioner filed a Notice of Appeal in his case, the Fourth Circuit Court of Appeals granted the government's Motion to dismiss the appeal based on the petitioner's appellate waiver.

Thereafter, on November 17, 2003, the petitioner filed the instant Motion to Vacate.  By this Motion, the petitioner alleges that he was subjected to ineffective assistance of counsel in

that his first attorney promised him a lower sentence than the one he received; that he was subjected to prosecutorial misconduct in that the prosecutor and certain law enforcement personnel threatened and intimidated his witnesses; and that he was subject to Double Jeopardy in violation of his Fifth Amendment rights.

On February 20, 2004, the Government's combined Answer and Motion for Summary Judgment was filed. According to the government, the petitioner's Motion to Vacate should be rejected because he has failed to demonstrate that his first attorney performed deficiently. Further, the government contends that the petitioner has failed to provide any factual support for his claim of misconduct. Last, the government denies that the petitioner was subjected to a violation of his rights as protected by the Double Jeopardy Clause.

On March 22, 2004, the petitioner filed his Response to the government's Motion for Summary Judgment. There, the petitioner does not come close to fully addressing the contentions raised by the government. Instead, the petitioner's Response argues that the case agent lied when she testified that his co-defendant had reported the that the ATM machine had been bombed so the men could obtain money. The petitioner notes the fact that the government never presented any signed statements from his sister; that his sister never personally appeared before the Court; and that his second attorney was able to confirm his story that his

sister had been intimidated by the government.

The petitioner also submitted declarations from himself and his girlfriend in support of his claims against counsel and the government. In summary, the petitioner's declaration states that his first attorney promised him a five-year sentence, and told him that he could spend the rest of his life in jail if he did not take the government's plea offer. The petitioner's girlfriend's declaration states that she heard the petitioner's first attorney make the statements concerning the risks he faced if he rejected the plea offer and the five-year sentencing promise. In addition, the girlfriend's declaration elaborated on the petitioner's allegation against the government, reporting that on an occasion when she spoke with the case agent, she was told that she would loose custody of her children and possibly spend time in jail if she tried to help the petitioner. Not surprisingly, however, this declaration makes not mention whatsoever of the matters about which the declarant would have testified had she felt free to do so.

Now, after having fully considered all of these matters, as well as the controlling law, the Court finds that the government's Motion for Summary Judgment should be <u>granted</u>, and that the instant Motion to Vacate should be <u>denied</u> and <u>dismissed</u>.

## II. **ANALYSIS**

### 1. **The petitioner's claims that his first attorney was ineffective is feckless**.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993). Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the peti-

11

tioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

More critically, a petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977).

Turning to the petitioner's claim that his first attorney

12

was ineffective for having promised him a lower sentence than the one which he received, the Court finds that such claim is wholly belied by the credible record evidence. To be sure, the record reflects that by the terms of the petitioner's Plea Agreement, he affirmed his understanding that at the time that he was entering his guilty pleas, his sentence had not yet been calculated; and that a sentencing prediction from any source, including counsel, was not binding upon the Court. Similarly, the record shows that during his Plea & Rule 11 Hearing, the petitioner swore that no one had promised him any particular sentence in order to induce his pleas.

Moreover, the Fourth Circuit has routinely rejected claims of ineffective assistance of counsel which are premised on allegedly inaccurate sentencing predictions. See, e.g., United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995) (rejecting ineffective assistance of claim by defendant sentenced as a career offender after having entered his guilty plea upon contrary assurances from counsel); and United States v. Lambey, 974 F.2d 1395 (4th Cir. 1992) (rejecting ineffective assistance claim by defendant who received 360-month sentence after entering his guilty plea on counsel's assurances that he faced a Sentencing Guidelines range of 78 to 108 months). Therefore, notwithstanding the fact that the petitioner's former attorney denies having promised the petitioner a five-year sentence, the under-

signed finds that the petitioner has failed to forecast evidence which demonstrates his entitlement to any relief on this claim.

### 2. **The petitioner's claim of prosecutorial misconduct also is baseless**.

Here, the petitioner claims that he was subjected to prosecutorial misconduct in that certain investigating officers threatened and intimidated his sister and his girlfriend. In support of this claim, the petitioner merely submitted his girlfriend's declaration, claiming that on a <u>single</u> occasion when she spoke with the case agent, she was told that if she tried to help the petitioner in anyway she would loose her children and could "possibly go to jail."

In order to establish a claim for reversible prosecutorial misconduct, the petitioner must demonstrate both that the prosecutor (or his representative) engaged in improper conduct, and that such misconduct prejudicially affected the petitioner's substantial rights so as to deprive him of a fair trial. <u>United States v. Chorman</u>, 910 F.2d 102, 103 (4th Cir. 1990). Here, even assuming that the petitioner can show misconduct, he still cannot prevail due to his failure to also show that he was prejudiced by that misconduct.

That is, on the record of this case, the petitioner has not even attempted to proffer any evidence regarding the nature of the testimony that his girlfriend would have provided for him. Thus, there is simply no reason for this Court to assume that

such witness would have given favorable testimony for the petitioner.

Moreover, given the evidence which has been presented, it appears more likely than not that the petitioner's sister would have provided testimony which was harmful to him. To be sure, the record reflects that early during the investigation of this case, the petitioner's sister and his father told the case agent about the petitioner and his co-defendant's involvement in these offenses. In addition, the case agent's Report of Interview with the petitioner's sister, contains the sister's statement that on an occasion before the ATM bombing occurred, the petitioner had become angry with her and her father and had threatened to blow them up with the bomb; and that after the bombing, the petitioner had told her that if anyone asked, she was to say that the petitioner had been with her at the time the bombing took place.

Furthermore, the record reflects that the government called the petitioner's father as a witness during the petitioner's numerous Bond Hearings. On all of those occasions, the petitioner's father testified that he and his family, including the petitioner's sister, were extremely afraid of the petitioner; and that the petitioner had struck and/or threatened all of his family members at various times during their lives. Therefore, based upon the foregoing, the Court finds that the petitioner has failed to carry his burden of showing either prosecutorial mis-

15

conduct or resulting prejudice.

### 3. **The petitioner's Double Jeopardy claim is barred by the waiver in his Plea Agreement**.

By his final claim, the petitioner alleges that he was subjected to Double Jeopardy in that he was convicted of (and sentenced) for duplicate offenses. However, under the terms of his Plea Agreement, the petitioner waived his right to bring this type of challenge in this collateral proceeding.

The Fourth Circuit has repeatedly approved the knowing and voluntary waiver of a defendant's right to appeal. See, e.g., United States v. General, 278 F.3d 389, 399-01 (4th Cir.), cert. denied, 536 U.S. 950 (2002); United States v. Brown, 232 F.3d 399 (4th Cir. 2000); United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Davis, 954 F.2d 182, 185-86 (4th Cir. 1992); United States v. Wessells, 936 F.2d 165 (4th Cir. 1991); and United States v. Wiggins, 905 F.2d 51, 52-54 (4th Cir. 1990) (noting that defendant may waive right to appeal, just as he may waive more fundamental rights such as the right to counsel and the right to a jury trial).

Here, the Fourth Circuit already found the petitioner's waiver to be valid and enforceable when it addressed that question in the context of his direct appeal. Accordingly, the Court finds that the waiver contained in petitioner's Plea Agreement is enforceable, and that he is not entitled to bring this Fifth Amendment claim.

### 4. **The petitioner's request for counsel must be denied**.

On September 16, 2004, nearly a full year after he filed his Motion to Vacate, the petitioner filed a Request for counsel. In support of that request, the petitioner merely states that during his Sentencing Hearing, this Court advised him that if he "needed an attorney to help with his appeal that [the Court] would appoint one for him." However, that statement concerned the petitioner's direct appeal, not a collateral civil proceeding such as the instant one. Rather, the law is clear that there is no legal entitlement to the assistance of counsel in civil proceedings such as the instant one.

In any event, counsel is appointed in other civil proceedings only when they involve "exceptional circumstances." See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Here, the petitioner has failed to demonstrate the existence of any "exceptional circumstances." Therefore, this Request will be denied.

### 5. **The petitioner's de-facto motion to amend his Motion to Vacate must be denied**.

Finally, on January 28, 2005, the petitioner filed a document captioned as "Amendment To §2255 [D]ue [T]o [N]ew Supreme Court [R]uling [A]nd [O]ther [O]verlooked [F]acts." By that document, the petitioner claims that the Court erred in imposing a 4-level enhancement under the bank robbery/larceny

Guidelines. Thus, the petitioner contends that he is entitled to relief under the recent U.S. Supreme Court rulings in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker/Fanfan</u>, 125 S.Ct. 738 (2005).

However, inasmuch as neither of those cases has been made retroactively applicable to collateral challenges, the petitioner cannot rely upon them in this proceeding. Therefore, this <u>de facto</u> motion for leave to amend will be <u>denied</u>.

### III.  CONCLUSION

The Court has conducted a careful review of the foregoing Motions along with the record of this matter, and determined that the petitioner has failed to forecast any evidence which support his claims of ineffective assistance of counsel or prosecutorial misconduct. Furthermore, the petitioner has waived his right to bring his Fifth Amendment challenge in this proceeding. Therefore, the government's Motion for Summary Judgment must be <u>granted</u>; and the petitioner's various Motions must be <u>denied</u>.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the petitioner's Request for the appointment of counsel (document # 9) is **DENIED.**

2. That the petitioner's <u>de facto</u> motion for leave to amend his Motion to Vacate (document # 10) is **DENIED;**

3. That the government's Motion for Summary Judgment

(document # 6) is **GRANTED;** and

4. That the petitioner's' Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

**Signed: August 26, 2005**

*Graham C. Mullen*
Chief United States District Judge